```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


THOMAS J. AARON,                    )
                                    )
          Plaintiff,                )
                                    )
     v.                             )   Case No. 4:09CV2091 FRB
                                    )
PHELPS COUNTY, MISSOURI,            )
et al.,                             )
                                    )
          Defendants.               )
```

**MEMORANDUM AND ORDER**

Presently before the Court is Defendants Phelps County, Missouri, Phelps County Sheriff's Department, Phelps County Sheriff Donald Blankenship, and Phelps County Sheriff's Deputy Mark Wynn's Joint Motion For Summary Judgment.  (Docket No. 57).  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.   Background**

Plaintiff opposes much of the instant motion for summary judgment.  In support of his opposition, plaintiff filed a statement of uncontroverted material facts, an opposition memorandum, and the affidavits of himself and of LaDonna Simmons. Defendants responded with a reply memorandum and a reply to plaintiff's statement of uncontroverted facts in which they advance several arguments seeking to prohibit plaintiff from referring to or relying upon certain facts.  Also, on December 12, 2012, defendants filed a separate motion seeking a Court order striking

certain portions of the affidavits of plaintiff and Ms. Simmons. (Docket No. 78).

The undersigned notes that both parties have included facts that are irrelevant to the determination of summary judgment in this matter. While some issues are addressed herein, rather than address each objection individually, the undersigned will summarize the facts relied upon in determining the instant motion for summary judgment. Such facts are undisputed unless otherwise noted. Defendants' Motion To Strike (Docket No. 78) will be denied without prejudice.

At approximately 9:12 p.m. on the night of November 12, 2006, defendant Mark Wynn, a sheriff's deputy with the Phelps County Sheriff's Department (also "Deputy Wynn") drove his marked patrol vehicle to the home of Ms. LaDonna Simmons for the purpose of serving her with a summons to appear in a civil case. Ms. Simmons's residence was located on a private gravel road off State Route E. The gravel road came to a fork more than 100 yards, but less than one quarter mile, off State Road E, and circled Ms. Simmons's house. As Deputy Wynn was driving to the residence, he turned left at the fork and parked his patrol vehicle on the southeast corner of Ms. Simmons's house. Deputy Wynn saw light illuminating the inside of the house, and saw a porch on the front of the house. Deputy Wynn walked across the front yard of the residence. Ms. Simmons was sitting in a chair watching television when she saw light in the front of the residence. She woke plaintiff Thomas Aaron, who also lived at the residence and who

until then had been asleep in a chair next to Ms. Simmons.  Mr. Aaron then went outside onto a deck that attached to the north side of the house.

As Deputy Wynn walked across the front yard, he saw a woman inside the residence looking through a window, and he saw Mr. Aaron standing on the deck.  Deputy Wynn approached the deck.  Mr. Aaron did not see Deputy Wynn's marked vehicle.  The exterior light near the deck was off.[1]  Deputy Wynn was wearing a black jacket, khaki pants, a full duty belt, and a department-approved green polo shirt that was embroidered with a gold star badge and with the words "Phelps County Sheriff Dept. Canine Unit."  Mr. Aaron noticed the black jacket and khaki pants.  Deputy Wynn told Mr. Aaron that he had parked his vehicle around the back of the house.  Mr. Aaron illuminated Deputy Wynn with a spotlight and asked him to identify himself.  Deputy Wynn stated that he was a deputy, and illuminated himself with his flashlight.  Mr. Aaron remained on the deck, and he and Deputy Wynn conversed.

The parties dispute much of what was said during the conversation.  In his deposition, Mr. Aaron testified that he asked Deputy Wynn three times to identify himself, but that Deputy Wynn responded only the second time.  Deputy Wynn contends that his black jacket was unzipped, and that when Mr. Aaron asked him for

---

[1] Defendants argue that plaintiff's citations do not support that there is an exterior light near the deck.  (Docket No. 79 at page 3).  However, in plaintiff's deposition, he testified that there was an exterior light near the deck, and that the light had not been turned on.  (Docket No. 58, Attachment 8, pages 87-88).

identification, he pushed it aside to reveal the embroidery.  Mr. Aaron contends that the jacket had been zipped, and that when asked to identify himself Deputy Wynn unzipped the jacket to briefly reveal what is now understood to be the embroidery, but then quickly zipped the jacket closed.  Mr. Aaron testified that at the time he did not recognize the embroidery for what it was and thought it looked like a yellow stain.

According to Mr. Aaron, Deputy Wynn asked him if he was LaDonna Simmons, and in response, Mr. Aaron asked Deputy Wynn whether he looked like LaDonna Simmons.  According to Mr. Aaron, Deputy Wynn also asked whether LaDonna Simmons was "out here," and Mr. Aaron replied in the negative because Ms. Simmons was not outside on the deck.  Deputy Wynn contends that Mr. Aaron refused to acknowledge that Ms. Simmons was inside the house, but Mr. Aaron explains that he did not tell Deputy Wynn that Ms. Simmons was inside the house because Deputy Wynn never asked whether Ms. Simmons was inside the house.  Deputy Wynn's suspicion was aroused that the woman he observed standing in the window was in fact Ms. Simmons, and he continued to approach the house.

The parties do not dispute that, as Deputy Wynn approached the house, Mr. Aaron stated his intent to go back inside, and grasped the handle of a sliding glass door and slid it open.  Mr. Aaron contends that Deputy Wynn then stepped onto the deck, hit and grabbed his left arm, applied an arm bar, and threw Mr. Aaron to the deck floor.  Deputy Wynn concedes doing so, but states that the force he used was justified because Mr. Aaron had

- 4 -

threatened to get a gun, and Deputy Wynn believed that Mr. Aaron was attempting to reenter the residence to do so.  Mr. Aaron contends that he did not realize that Deputy Wynn was a deputy sheriff, and that he never mentioned a gun before Deputy Wynn stepped onto the deck and hit and grabbed him.  Mr. Aaron contends that, as he and Deputy Wynn were engaged in physical confrontation, he (Mr. Aaron) yelled to Ms. Simmons to get a gun because, not realizing that Deputy Wynn was in fact a sheriff's deputy, he believed he and Ms. Simmons were being robbed and/or attacked, and he wanted Ms. Simmons to get the gun to protect herself inside the house.  The parties do not dispute that, during the physical confrontation, Deputy Wynn grabbed Mr. Aaron, applied an arm bar, knocked him to the floor of the deck, punched him, and sprayed his face with pepper spray.  As a result of his encounter with Deputy Wynn, Mr. Aaron suffered injuries.

Deputy Wynn concedes that he punched Mr. Aaron, but that he did so because Mr. Aaron had grabbed his index finger and was bending it back.  Deputy Wynn also concedes that he sprayed Mr. Aaron with pepper spray, but did so only because Mr. Aaron had again grabbed his index finger and was bending it back, and also because he needed to gain control of Mr. Aaron's right wrist.  Mr. Aaron, on the other hand, denies ever grabbing Deputy Wynn's index finger, and states that the reason Deputy Wynn could not gain control over his right wrist was because Deputy Wynn was on top of him, pinning his right arm beneath him.

According to Mr. Aaron, Deputy Wynn also "raked" the

teeth of the handcuffs over his arm and sprayed him with a long blast of pepper spray after both of his wrists were secured in handcuffs.  Deputy Wynn, however, denies raking Mr. Aaron's arm with the handcuff teeth and denies using pepper spray after Mr. Aaron was fully handcuffed.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, this Court is required to view the facts in the light most favorable to the non-moving party, and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  <u>Agristor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## III. Discussion

### A. <u>Abandoned Claims</u>

Defendants now move for summary judgment on all of the claims plaintiff asserts in Counts I and II of plaintiff's First Amended Complaint.[2]  In their Memorandum in support of the instant

---

[2]Plaintiff's two-count First Amended Complaint at times fails to specify exactly which claims are alleged against which

- 6 -

motion, defendants note that, in addition to excessive use of force in violation of the Fourth Amendment, Count I of plaintiff's First Amended Complaint appears to raise claims of denial of medical care in violation of the Eighth and Fourteenth Amendments, violation of Fourteenth Amendment Substantive Due Process, violation of § 57.015(1) of the Revised Statutes of Missouri, municipal liability under § 1983, a claim of unconstitutional policy and custom, and claims of failure to instruct, supervise, control, discipline and train.

In response to defendants' Motion For Summary Judgment, plaintiff filed both an "Answer" (Docket No. 70) and an opposition memorandum (Docket No. 73).  In his Answer, plaintiff states that defendants are not entitled to summary judgment on plaintiff's claims of excessive force under the Fourth Amendment or his Missouri state law claim of battery, or on the issues of qualified immunity or official immunity.  In his opposition memorandum, plaintiff does not discuss defendants' arguments concerning an alleged violation of plaintiff's Substantive Due Process rights under the Fourteenth Amendment, or for wrongful denial of medical care in violation of the Eighth and Fourteenth Amendment, and instead argues only that Deputy Wynn used excessive force in violation of the Fourth Amendment.  Also in his opposition memorandum, plaintiff explicitly states that he concedes the defendants' position regarding his claims for violation of Mo. Rev.

---

defendants.

Stat. § 57.015(1), municipal liability for violation of § 1983, unconstitutional policy and unconstitutional custom, and failure to supervise, control, discipline and train. Defendants then filed a reply memorandum in which they noted that plaintiff had abandoned his claims of violation of his Substantive Due Process rights under the Fourteenth Amendment and for denial of medical care in violation of the Eighth and Fourteenth Amendment, and had conceded all of defendants' arguments on his claims for violation of Mo. Rev. Stat. § 57.015(1), municipal liability for violation of § 1983, unconstitutional policy and unconstitutional custom, and failure to supervise, control, discipline and train. Defendants renewed their motion for summary judgment on those claims. Plaintiff filed nothing in response.

  The undersigned agrees that plaintiff has abandoned his claims of violation of his Substantive Due Process rights under the Fourteenth Amendment and for denial of medical care in violation of the Eighth and Fourteenth Amendments, and has also abandoned his claims of violation of Mo. Rev. Stat. § 57.015(1), municipal liability for violation of § 1983, unconstitutional policy and unconstitutional custom, and failure to supervise, control, discipline and train. Plaintiff's opposition to the instant motion presents neither argument nor evidence to support any of the foregoing claims. A party opposing summary judgment "may not rest upon mere allegations or denials . . . but must set forth specific facts showing there is a genuine issue for trial." Satcher v. University of Ark. at Pine Bluff Bd. of Tr., 558 F.3d 731, 734-35

(8th Cir. 2009) (quoting Anderson, 477 U.S. at 256). "It [is] not the District Court's responsibility to sift through the record to see if, perhaps, there [is] an issue of fact." Id. at 735. Consequently, the "failure to oppose a basis for summary judgment constitutes waiver of that argument." Id. Therefore, defendants are entitled to summary judgment in their favor on plaintiff's claims in Count I of violation of his Substantive Due Process rights under the Fourteenth Amendment, denial of medical care in violation of the Eighth and Fourteenth Amendments, violation of Mo. Rev. Stat. § 57.015(1), municipal liability for violation of § 1983, unconstitutional policy and unconstitutional custom, and failure to supervise, control, discipline and train.

    B.    Excessive Use of Force

In Count I of the First Amended Petition, plaintiff alleges that Deputy Wynn used excessive force in violation of his Fourth Amendment rights. Defendants contend that they are entitled to summary judgment on this claim because Deputy Wynn's use of force was objectively reasonable under the facts and circumstances. Defendants also argue that Deputy Wynn is protected by the doctrine of qualified immunity.

Courts analyze a claim that police used excessive force during an arrest under the Fourth Amendment's standard of "objective reasonableness." Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006). "The reasonableness of a particular use of force depends on the circumstances of each case, including the 'severity of the crime at issue, whether the suspect poses an

- 9 -

immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The Court must consider "the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 396-97.

Plaintiff has demonstrated that there exist genuine disputes of material fact as to his claim of excessive force in violation of the Fourth Amendment, including: (1) whether Deputy Wynn properly identified himself as a sheriff's deputy to Mr. Aaron such that Mr. Aaron could be expected to have understood that Deputy Wynn was in fact a sheriff's deputy; (2) when and in what context Mr. Aaron mentioned a gun; (3) whether Mr. Aaron grabbed Deputy Wynn's index finger and pulled it back; (4) how many times Deputy Wynn struck Mr. Aaron; (5) whether Deputy Wynn raked the teeth of the handcuffs over Mr. Aaron's arm; and (6) whether Deputy Wynn sprayed Mr. Aaron with pepper spray after Mr. Aaron was fully secured in handcuffs.[3]

---

[3]In determining that there remain disputed issues of material fact on this claim, the undersigned did not consider paragraph 21 of the Affidavit of Thomas Aaron in which Mr. Aaron averred that Deputy Wynn sprayed him twice and that he was in

- 10 -

Deputy Wynn visited the residence on the night in question to serve a civil summons upon Ms. Simmons, not in response to a severe crime. Also, there is a genuine dispute surrounding the issue of whether plaintiff could have reasonably been perceived as a threat to Deputy Wynn or others. Deputy Wynn admits that he stepped onto the deck, grabbed plaintiff, applied an arm bar, and pushed him to the ground, but claims that doing so was objectively reasonable because plaintiff had threatened to get a gun and tried to re-enter the residence. Plaintiff, however, denies mentioning a gun before Deputy Wynn stepped onto the deck and hit and grabbed him. There are also genuine disputes of material fact concerning the objective reasonableness of Deputy Wynn's action of punching plaintiff and using pepper spray. While Deputy Wynn contends that such force was objectively reasonable because Mr. Aaron grabbed his index finger and was bending it back, Mr. Aaron denies doing so and supports such denial with his deposition testimony and affidavit. Mr. Aaron further claims that Deputy Wynn used objectively unreasonable force in pepper spraying him while he was fully handcuffed, while Deputy Wynn denies doing so.[4]

---

handcuffs both times.

[4] Defendants argue, <u>inter alia</u>, that there can be no disputed fact on this point given Ms. Simmons's deposition, which defendants argue contradicts Mr. Aaron's testimony that he was sprayed with pepper spray a second time, citing pages 79, 224 and 225 of Ms. Simmons's deposition. (Docket No. 58, Attachment 3, pages 79, 224, and 225). In the deposition testimony defendants cite, Ms. Simmons testified that Deputy Wynn sprayed plaintiff with pepper spray before both of his wrists were secured in handcuffs, but did not affirmatively testify that Deputy Wynn did not spray plaintiff with pepper spray after he was fully handcuffed. Whether the testimony of plaintiff and Ms. Simmons

The undersigned is mindful of the obligation to view the evidence from the perspective of a reasonable officer on the scene, and also that police officers must often make split-second judgments in tense, rapidly evolving situations about the amount of force necessary. However, the undersigned must also keep in mind the summary judgment standard, which requires viewing the facts in the light most favorable to plaintiff, the non-moving party, and giving plaintiff the benefit of any inferences that logically can be drawn from those facts. Agristor Leasing, 826 F.2d at 734. Here, having considered the parties' arguments in light of the record, the undersigned cannot say as a matter of law that Deputy Wynn's use of force was objectively reasonable. As a result, summary judgment will be denied on plaintiff's claim of excessive use of force in violation of the Fourth Amendment.

C. Qualified Immunity

Defendants next argue that they are entitled to summary judgment because Deputy Wynn is shielded from liability by the doctrine of qualified immunity, which "shields a government official from liability and the burdens of litigation unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "On summary judgment, government officials possess qualified immunity unless

---

testimony is contradictory on this point is a question of fact to be determined by a jury.

(1) the facts plaintiff has shown amount to a violation of a constitutional right, and (2) the right violated was clearly established when the alleged misconduct occurred." Williams v. Herron, 687 F.3d 971, 974 (8th Cir. 2012) (internal citation omitted). A court has discretion in deciding which of the two prongs of the qualified immunity analysis to consider first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

While plaintiff's right to be free from the use of excessive force was clearly established at the time of his encounter with Deputy Wynn, as discussed above, genuine issues of fact surround the issue of whether Deputy Wynn's use of force was objectively reasonable and thus, whether Deputy Wynn's conduct amounted to a violation of a constitutional right. Defendants are therefore not entitled to summary judgment on the issue of qualified immunity.

D.  Battery and Official Immunity

Defendant next argues entitlement to summary judgment on Count II of plaintiff's First Amended Complaint alleging a claim of battery against Deputy Wynn. A police officer making an arrest is "answerable in damages as for assault and battery only when . . . he uses more force than is reasonably necessary." Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. App. E.D. 1987). The undersigned has already determined that there are genuine issues of material fact regarding whether Deputy Wynn's use of force was reasonable. However, Deputy Wynn may be protected from liability on this claim by the doctrine of official immunity, which shields

police officers from liability for "negligent acts that are related to discretionary functions." Blue v. Harrah's North Kansas City, 170 S.W.3d 466, 479 (Mo. App. W.D. 2005) (citing Miller v. Smith, 921 S.W.2d 39, 45 (Mo. App. W.D. 1996)). While the decision of whether to arrest someone is a discretionary function, official immunity does not protect against discretionary acts done in bad faith or with malice. Id. (citing State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. banc 1986)). Bad faith or malice generally requires actual intent to cause injury. Id. (citing Davis v. Bd. of Educ., 963 S.W.2d 679, 689 (Mo. App. E.D. 1998)).

Based upon plaintiff's allegations, a jury could find that Deputy Wynn used force in the course of a discretionary act with bad faith or with malice. Summary judgment on plaintiff's claims in Count II will therefore be denied.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Phelps County, Missouri, Phelps County Sheriff's Department, Phelps County Sheriff Donald Blankenship, and Phelps County Sheriff's Deputy Mark Wynn's Joint Motion For Summary Judgment (Docket No. 57) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendants Phelps County, Missouri, Phelps County Sheriff's Department, Phelps County Sheriff Donald Blankenship, and Phelps County Sheriff's Deputy Mark Wynn's Joint Motion For Summary Judgment (Docket No. 57) is granted as to Count I of plaintiff's First Amended Complaint to the extent Count

I alleges claims of denial of medical care in violation of the Eighth and Fourteenth Amendments, violation of Fourteenth Amendment Substantive Due Process, violation of § 57.015(1) of the Revised Statutes of Missouri, municipal liability under § 1983, unconstitutional policy and custom, and failure to instruct, supervise, control, discipline and train.

**IT IS FURTHER ORDERED** that Defendants Phelps County, Missouri, Phelps County Sheriff's Department, Phelps County Sheriff Donald Blankenship, and Phelps County Sheriff's Deputy Mark Wynn's Joint Motion For Summary Judgment (Docket No. 57) is denied in all other respects.

**IT IS FURTHER ORDERED** that Defendants Phelps County, Missouri, Phelps County Sheriff's Department, Phelps County Sheriff Donald Blankenship, and Phelps County Sheriff's Deputy Mark Wynn's Motion To Strike Affidavits Of Plaintiff And Ladonna Simmons (Docket No. 78) is denied without prejudice.

_____
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of January, 2013.